102 P.3d 367

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Kevin James LIOEN, Defendant–Appellant.**

**No. 25091.**

Intermediate Court of Appeals of Hawai'i.

Nov. 24, 2004.

As Amended Jan. 21, 2005.

Arleen Watanabe, Deputy Prosecuting Attorney, County of Maui, On the briefs, for Plaintiff–Appellee.

Lee S. Hayakawa, Esq., Honolulu, On the briefs, for Defendant–Appellant.

BURNS, C.J., FOLEY AND NAKAMURA, JJ.

Opinion of the Court by NAKAMURA, J.

Defendant–Appellant Kevin James Lioen (Lioen) appeals his conviction for driving while his license remained suspended or revoked for driving under the influence of intoxicating liquor or drugs (DWLSR–DUI) in violation of Hawaii Revised Statutes (HRS) § 291–4.5 (1993 and Supp.1998). Lioen was convicted after a bench trial on April 3, 2002,

before Judge Douglas H. Ige, District Court of the Second Circuit (district court). Judge Ige entered the Judgment on April 17, 2002.[1]

This appeal involves Lioen's third conviction for DWLSR–DUI. He was previously convicted of DWLSR–DUI on October 15, 1997, and May 30, 2001. To avoid confusion, we will refer to the case resulting in the October 15, 1997, conviction as the "first" DWLSR–DUI prosecution or conviction; the case resulting in the May 30, 2001, conviction as the "second" DWLSR–DUI prosecution or conviction; and the case resulting in the April 17, 2002, conviction, which is challenged in this appeal, as the "third" or the "present" DWLSR–DUI prosecution or conviction.

On appeal, Lioen contends that his third DWLSR–DUI conviction should be reversed or vacated because 1) Judge Ige should have *sua sponte* recused himself because Judge Ige had presided over Lioen's second DWLSR–DUI conviction; 2) the State of Hawai'i (the State) failed to prove that Lioen had the required *mens rea* with respect to the attendant circumstances of the DWLSR–DUI offense; 3) the trial court abused its discretion in admitting testimony pertaining to Lioen's second DWLSR–DUI conviction; and 4) the State failed to prove that Lioen had been driving. We reject each of Lioen's contentions and affirm the district court's Judgment.

## BACKGROUND

### A. The State's Trial Evidence.

On October 11, 2001, Maui Police Department Officer Keith Taguma was on patrol in Wailuku, Maui. At about 1:05 p.m., he saw a truck stopped in the middle of High Street, a two-lane roadway. The truck appeared to have stalled and was completely obstructing the northbound lane. Officer Taguma saw

Lioen get out of the driver's side of the truck and start to push it, and Officer Taguma went over to help. Lioen told Officer Taguma that he had "just stalled out." Officer Taguma did not notice anyone else around the truck.

Officer Taguma and Lioen pushed the truck to an adjoining street, and Lioen got into the driver's seat and maneuvered the truck into a parking lot. While assisting Lioen, Officer Taguma began to wonder whether Lioen was the owner of the truck. Once the truck was parked, Officer Taguma asked Lioen for his driver's license, an insurance card, and the registration for the truck. Lioen was unable to produce these documents and admitted that he had no driver's license or insurance card. Lioen was evasive and Officer Taguma had to repeatedly question Lioen to get information from him.

Officer Taguma cited Lioen for driving without a license and without insurance.[2] He told Lioen not to move the truck unless Lioen could summon someone with a license or a tow truck. During his entire encounter with Officer Taguma, Lioen never claimed that he had been traveling in the truck with another person. After citing Lioen, Officer Taguma remained on patrol in the area for another hour, until about 2:00 p.m., and did not notice anyone approach the truck.

The State introduced a certified copy of records from Maui County's Motor Vehicle and Licensing Division (Licensing Division). These records established that Lioen had purchased the truck on September 15, 2001, and was the owner of the truck on October 11, 2001, the date he was cited by Officer Taguma. The State also introduced certified copies of the following records[3] which established that Lioen's driver's license had previously been suspended and revoked for

---

1. District Court Judge Douglas H. Ige also found Defendant–Appellant Kevin James Lioen (Lioen) guilty of operating or using a motor vehicle without insurance in violation of Hawaii Revised Statutes (HRS) § 431:10C–104(a) (Supp.1998). Lioen does not appeal this conviction.

2. The State of Hawai'i (the State) later filed an amended complaint charging Lioen with driving while his license remained suspended or revoked for driving under the influence of intoxicating

liquor or drugs (DWLSR–DUI) and with operating or using a motor vehicle without insurance.

3. Although Lioen objected to certain of the State's documentary evidence at trial, he does not challenge on appeal the admissibility of any of these records. We therefore may freely consider these records in evaluating his claims on appeal. *See* Hawai'i Rules of Appellate Procedure Rule 28(b)(7) ("Points not argued may be deemed waived.").

driving under the influence of alcohol (DUI-alcohol) and that his license remained revoked on October 11, 2001:

1. Records from the Licensing Division which revealed that Lioen's license had been administratively revoked on five occasions for DUI-alcohol, including two lifetime revocations, that he had numerous court-imposed license suspensions, and that he did not have a valid driver's license on October 11, 2001.

2. Records from the Administrative Driver's License Revocation Office (ADLRO) relating to a July 9, 1999, administrative hearing decision which showed that Lioen's driver's license had been revoked for life as of June 20, 1999, based on a May 20, 1999, DUI-alcohol arrest.

3. Records from the ADLRO relating to a June 14, 1999, administrative review decision which showed that Lioen's driver's license had been revoked for life as of July 7, 1999, based on a June 6, 1999, DUI-alcohol arrest.

4. A May 30, 2001, district court calendar and a Notice of Entry of Judgment pertaining to Lioen's second DWLSR–DUI conviction. These documents established that on May 30, 2001, Lioen pleaded no contest to the offense of DWLSR–DUI in violation of HRS § 291–4.5, admitted that this was his second DWLSR–DUI conviction, and was sentenced by Judge Ige to 30 days in jail, a $1,000 fine, and a two-year license suspension.

5. An abstract of Lioen's prior traffic offenses which included entries reflecting Lioen's four prior DUI-alcohol convictions, his being sentenced to the suspension of his license on each of these convictions, and his two prior DWLSR–DUI convictions.

Douglas Burge, a review officer and custodian of records for the ADLRO, testified that a notice of administrative review decision dated June 14, 1999, and a notice of administrative hearing decision dated July 9, 1999, were mailed to Lioen. Each notice advised Lioen that his driver's license had been revoked for life based on a different DUI-alcohol arrest. Burge testified that the notices were mailed to Lioen's last known address but could not verify whether Lioen actually received them.

Eugene Evans testified that he served as the Deputy Prosecuting Attorney (DPA) in Lioen's second DWLSR–DUI conviction. Evans identified Lioen as the person who appeared in court on May 30, 2001, pleaded no contest to the DWLSR–DUI charge, and was sentenced. Evans identified Judge Ige as the presiding judge.

**B. Evidence Presented by Lioen.**

The defense called James Bruneke, a friend and roommate of Lioen, as its sole witness. Bruneke testified that on October 11, 2001, he was driving Lioen's truck, with Lioen as a passenger, when the truck ran out of gas. Bruneke stated that the vehicle behind them gave him a ride to a gas station. Bruneke testified that he left to get gas without helping Lioen move the stalled truck from the middle of the road. Bruneke stated that he got the gas, walked back to the truck, put the gas in the truck, and waited for Lioen who returned to the truck around 2:00 p.m.

**C. Judge Ige's Rulings.**

The sole argument raised by Lioen's counsel in closing argument was that the State had not proved that Lioen had been operating the truck. As stated by Lioen's counsel:

> Your Honor, we would submit that the State has not proven beyond a reasonable doubt that Mr. Lioen was operating this vehicle. The ADLR [Administrative Driver's License Revocation] documents do show that he has a lifetime suspension. We understand that has been shown. But we would submit that he was not actually operating the vehicle.

Lioen's counsel urged the court to accept Bruneke's testimony that Bruneke had been driving the truck and that Lioen had only been a passenger. Judge Ige, however, rejected Bruneke's testimony as not credible. Judge Ige determined that Lioen had been driving and found Lioen guilty of DWLSR–DUI and driving without insurance.

Lioen was sentenced on April 17, 2002. The State introduced evidence that Lioen

had two prior convictions for DWLSR–DUI, four prior DUI-alcohol convictions, and four prior convictions for driving without insurance. Because this was Lioen's third DWLSR–DUI conviction in five years, Judge Ige imposed the mandatory sentence required under HRS § 291–4.5(b)(3) (1993) of one year imprisonment, a $2,000 fine, and permanent revocation of his driver's license. With respect to the driving without insurance conviction, Judge Ige sentenced Lioen to a concurrent term of 30 days in jail, a $2,500 fine, and the suspension of his license for one year to run consecutive to his permanent license revocation.

## DISCUSSION

### A. Judge Ige Did Not Err in Failing to *Sua Sponte* Recuse Himself.

■ It was no mystery to the parties that Judge Ige had presided over Lioen's second DWLSR–DUI conviction. Evans, the DPA in that case, testified that Judge Ige had taken Lioen's no contest plea and sentenced Lioen on the second DWLSR–DUI conviction. In addition, documents admitted at trial, including the Notice of Entry of Judgment on Lioen's second DWLSR–DUI conviction and Lioen's traffic abstract, identified Judge Ige as the presiding judge in that case.[4]

■ Lioen did not move for Judge Ige's recusal from the present DWLSR–DUI prosecution. On appeal, Lioen claims that Judge Ige should have *sua sponte* recused himself. A party who has not made a motion for recusal in the trial court bears the burden on appeal of demonstrating that the trial judge committed plain error in failing to *sua sponte* recuse himself or herself. *State v. Gomes,* 93 Hawai'i 13, 17, 995 P.2d 314, 318 (2000). Under the plain error standard of review, an appellate court may correct errors "which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to preserve the denial of fundamental rights." *State v. Vanstory,* 91 Hawai'i 33, 42, 979 P.2d 1059,

1068 (1999) (internal quotation marks and citation omitted).

> This court's power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system-that a party must look to his or her own counsel for protection and bear the cost of counsel's mistakes.

*Id.* (quoting, *State v. Kelekolio,* 74 Haw. 479, 514–15, 849 P.2d 58, 74–75 (1993)).

Lioen claims that Judge Ige's involvement in Lioen's second DWLSR–DUI conviction required the judge to recuse himself from Lioen's present DWLSR–DUI prosecution. In support of his recusal argument, Lioen cites Canons 2 and 3E.(1)(a) of the Hawai'i Code of Judicial Conduct (Revised) (1992) (CJC) which provides in relevant part that:

> Canon 2 A Judge Shall Avoid Impropriety and the Appearance of Impropriety in All of the Judge's Activities.

> Canon 3 A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently

> . . . .

> E. Disqualification

> (1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

> (a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding . . .

Hawai'i courts have not previously addressed the question of whether a judge in a criminal case must disqualify himself or herself because the judge presided over a prior criminal prosecution involving the same defendant. Federal and state courts construing codes of judicial conduct with language

---

4. Because Judge Ige's involvement in Lioen's second DWLSR–DUI conviction was revealed through evidence presented at the trial, we reject Lioen's claim that Judge Ige should have disclosed this information to the parties. We see no reason why a judge should personally have to disclose information that is already disclosed and known to the parties.

comparable to the Hawai'i CJC have not required recusal. The predominant view is that a judge's presiding over a prior prosecution of the defendant does not, without more, provide a basis for recusal. *E.g., Liteky v. United States,* 510 U.S. 540, 551, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) ("It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant."); *State v. Webb,* 238 Conn. 389, 680 A.2d 147, 186 (1996)(holding that the judge's presiding over a prior trial and sentencing of the defendant did not raise a reasonable question about the judge's impartiality); *People v. Vance,* 76 Ill.2d 171, 28 Ill.Dec. 508, 390 N.E.2d 867, 871 (1979) (finding that something more than presiding at an earlier conviction is necessary before a judge may be considered disqualified from hearing subsequent cases involving the same defendant); *Irby v. State,* 429 So.2d 1179, 1182 (Ala.Crim.App.1983) (same).

■ In *Liteky,* the United States Supreme Court concluded that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." 510 U.S. at 555, 114 S.Ct. 1147. The Court further concluded that opinions formed by a judge as a result of facts introduced or events occurring in the course of prior proceedings involving the defendant do not warrant the judge's disqualification unless they "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* We agree with these general principles.

Lioen cites no ruling or statement of Judge Ige suggesting that Judge Ige was biased or prejudiced against him. Lioen instead attempts to bring his claim within Canon 3E.(1)(a) by contending that Judge Ige may have acquired "personal knowledge of disputed evidentiary facts" relating to his driver's license status by presiding over Lioen's second DWLSR–DUI conviction. However, the phrase "personal knowledge" as used in Canon 3E.(1)(a) refers to knowledge acquired from an extrajudicial source; it does not include information a judge learns through participation in a prior case. *E.g., Attorney Grievance Comm'n v. Shaw,* 363 Md. 1, 766 A.2d 1028, 1033 (2001) (construing

analogous provision in the Maryland CJC); *Tripp v. Executive Office of the President,* 104 F.Supp.2d 30, 34–35 (D.D.C.2000) (construing analogous federal provision). Lioen does not allege that Judge Ige acquired any information related to his present case from an extrajudicial source.

In addition, Lioen fails to specify what information about his driver's license status Judge Ige supposedly acquired through presiding over Lioen's second DWLSR–DUI conviction or point to any information Judge Ige acquired which related to disputed evidentiary facts. He only asserts that "it is quite possible, if not probable" that Judge Ige became privy to information regarding the status of Lioen's license.

Lioen's reliance on *State v. Brown,* 70 Haw. 459, 776 P.2d 1182 (1989) is misplaced. In *Brown,* the Hawai'i Supreme Court found that it would violate due process for a judge who caused a criminal contempt proceeding to be instituted against the accused to then sit as the trier of fact on the contempt charge. *Id.* at 465–67, 776 P.2d at 1187–88. The essence of the Court's analysis was that the judge's status as the accuser on the contempt charge created an inherent conflict of interest which may tempt the judge, as the trier of fact, to forget the burden of proof. *Id.* at 467, 776 P.2d at 1187–88.

There is no analogous conflict of interest in this case. Unlike in *Brown,* Judge Ige was not Lioen's accuser, nor did he have any stake, either actual or apparent, in the outcome of Lioen's present DWLSR–DUI prosecution. Judge Ige's role in Lioen's second DWLSR–DUI prosecution was to accept Lioen's no contest plea and to impose the mandatory sentence required for a second offense under HRS § 291–4.5(b)(2). There is no evidence that Judge Ige made any comment or expressed any opinion in either the second DWLSR–DUI prosecution or in the present DWLSR–DUI prosecution that suggested a personal bias or prejudice against Lioen that "would make fair judgment impossible." *Liteky v. United States,* 510 U.S. at 555, 114 S.Ct. 1147.

Lioen's recusal claim therefore boils down to a bald assertion that Judge Ige's presiding over Lioen's second DWLSR–DUI convic-

tion, standing alone, required Judge Ige to *sua sponte* recuse himself from the present case. We reject this claim.[5] We conclude that Judge Ige's presiding over a prior prosecution of Lioen, without more, did not require his *sua sponte* recusal.

**B. There Was Sufficient Evidence to Prove Lioen's Reckless *Mens Rea* With Respect to the Attendant Circumstances of the DWLSR–DUI Offense.**

■■■■ Lioen argues that there was insufficient evidence to show that he acted recklessly with respect to the attendant circumstances of the DWLSR–DUI offense. The standard for reviewing the sufficiency of evidence on appeal is whether, viewing the evidence in the light most favorable to the State, there was substantial evidence to support the conviction. *State v. Ildefonso,* 72 Haw. 573, 576, 827 P.2d 648, 651 (1992).

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution ...; the same standard applies whether the case was before a judge or jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. Indeed, even if it could be said in a bench trial that the conviction is against the weight of the evidence, as long as there is substantial evidence to support the requisite findings for conviction, the trial court will be affirmed.

*State v. Batson,* 73 Haw. 236, 248, 831 P.2d 924, 931 (1992) (internal citation omitted). We also give full play to the province of the trier of fact to determine credibility, weigh the evidence, and draw rational inferences from the facts. *State v. Yabusaki,* 58 Haw. 404, 411, 570 P.2d 844, 848 (1977).

**1. HRS § 291–4.5(a)**

Lioen's third DWLSR–DUI prosecution was pursuant to HRS § 291–4.5(a) (Supp. 1998), which provides in relevant part that:

> No person whose driver's license has been revoked, suspended, or otherwise restricted pursuant to chapter 286 or section 291–4 or section 291–7 shall operate a motor vehicle upon the highways of this State either while the person's license remains suspended or revoked or in violation of the restrictions placed on the person's license.[6]

By its terms, HRS § 291–4.5(a) encompasses license revocations, suspensions, and restrictions pursuant to 1) HRS Chapter 286 which includes provisions authorizing the administrative revocation of driver's licenses after arrests for DUI-alcohol; 2) HRS § 291–4 (Supp.1999) which establishes the criminal offense of DUI-alcohol; and 3) HRS § 291–7 (1993) which establishes the criminal offense of driving under the influence of drugs (DUI-drugs). HRS § 291–4.5(a) does not list license revocations, suspensions, or restrictions pursuant to HRS § 291–4.5(a) itself as triggering the application of the statute.

HRS § 291–4.5(a) does not specify the state of mind necessary to establish the offense. In *State v. Vliet,* 95 Hawai'i 94, 99, 19 P.3d 42, 47 (2001), the Hawai'i Supreme Court concluded that an intentional, knowing, or reckless state of mind applies to all elements of HRS § 291–4.5.[7] Thus, for the State's evidence to be sufficient, it was required to prove that Lioen at least acted with a reckless state of mind as to all the elements of HRS § 291–4.5(a), including its attendant circumstances.

The conduct element of HRS § 291–4.5(a) is operating a motor vehicle on a state highway. The attendant circumstances are that the defendant's license remained revoked or suspended pursuant to HRS Chapter 286, HRS § 291–4, or HRS § 291–7 or that the

5. We note that in *State v. Gomes,* 93 Hawai'i 13, 19, 995 P.2d 314, 320 (2000), the Hawai'i Supreme Court held that where a judge's presiding over a case only creates an appearance of impropriety, a defendant's substantial rights are not affected.

6. HRS § 291–4.5 (1993 and Supp.1998) was repealed after the date of Lioen's alleged third

DWLSR–DUI offense and was recodified with amendments as HRS § 291E–62 (Supp.2003).

7. Although the opinion, in stating this conclusion, refers to "HRS § 291–4," when read in context it appears the court meant "HRS § 291–4.5." *State v. Vliet,* 95 Hawai'i 94, 99, 19 P.3d 42, 47 (2001).

vehicle's operation violated license restrictions imposed pursuant to those provisions. On appeal, neither party provides meaningful discussion on whether Lioen's reckless state of mind as to the attendant circumstances must be shown not only regarding the revoked, suspended, or restricted status of his license, but also regarding the *reason* for the revocation, suspension, or restriction, namely, that it was imposed pursuant to HRS Chapter 286, HRS § 291–4, or HRS § 291–7. Both parties assume that the required *mens rea* extends to the reason for the revocation, suspension, or restriction. For purposes of Lioen's appeal, we also assume without deciding that the parties' assumption is correct because we need not resolve the issue of how far the required *mens rea* extends to decide Lioen's appeal.[8]

### 2. Lioen's claim is without merit.

In 1999, Lioen's driver's license was twice administratively revoked for life pursuant to HRS Chapter 286 based on DUI-alcohol arrests. These were the only license revocations, suspensions, or restrictions meeting the terms of HRS § 291–4.5(a) that were still in effect on October 11, 2001, the date of Lioen's alleged third DWLSR–DUI offense.

The State correctly notes that Lioen's second DWLSR–DUI conviction must have been based on a license revocation or suspension that satisfied HRS § 291–4.5(a). The State claims that Lioen's May 30, 2001, no contest plea in the second DWLSR–DUI prosecution shows that he was aware of the lifetime administrative revocations. Lioen counters that the State's evidence did not show when

he committed the second DWLSR–DUI offense. Prior to his no contest plea, Lioen had been subject to several different license revocations and suspensions for DUI-alcohol which met the requirements of HRS § 291–4.5(a). Lioen contends that without proof of when he committed the second DWLSR–DUI offense, it is possible that his second DWLSR–DUI conviction was based on a license revocation or suspension which ended before October 11, 2001, and not on the lifetime administrative revocations.[9]

Lioen argues that while the evidence showed that the ADLRO mailed notices of the two administrative decisions revoking his license for life to his last known address, there was no evidence that he actually received either notice. Lioen claims that because the State did not prove that he actually received either notice, the evidence was insufficient to show that he acted with a reckless *mens rea* regarding the attendant circumstances that his license remained administratively revoked for DUI-alcohol. We disagree.

Under HRS § 702–206(3)(b) (1993), "[a] person acts recklessly with respect to attendant circumstances when he consciously disregards a substantial and unjustifiable risk that such circumstances exist." For purposes of the recklessness *mens rea*,

> A risk is substantial and unjustifiable … if, considering the nature and purpose of the person's conduct and the circumstances known to him, the disregard of the risk involves a gross deviation from the

---

**8.** The precise issue of whether the required *mens rea* extends to the reason for the license revocation, suspension, or restriction was not addressed in *State v. Vliet*, 95 Hawai'i 94, 99, 19 P.3d 42, 47 (2001). The answer to this issue may require consideration of a number of factors that were not discussed in the parties' briefs.

**9.** The State disputes Lioen's assertion that there was no evidence establishing when he committed the second DWLSR–DUI offense. The State argues that there was sufficient evidence to show that Lioen committed the second DWLSR–DUI offense on March 12, 2001. Because the only license revocations or suspensions in effect on that date were the lifetime administrative revocations, the State argues that Lioen's no contest plea shows he had actual knowledge of the life-

time revocations. The State's evidentiary claim is based on its interpretation of the documentary evidence. The State points to the notation "3/12/01" which appears in the "Name" section of the May 30, 2001, district court calendar. This calendar sets forth the proceedings in Lioen's second DWLSR–DUI prosecution. The State argues that anyone familiar with the calendar would recognize that "3/12/01" was the date of the offense. In addition, Lioen's traffic abstract lists the date "3/12/01" in relation to entries regarding his second DWLSR–DUI conviction. We need not resolve the parties' dispute over the import of these records because we conclude that the evidence was sufficient even if the actual date of the second DWLSR–DUI offense was unknown.

standard of conduct that a law-abiding person would observe in the same situation. HRS § 702–206(3)(d) (1993).

In the context of a prosecution for driving without insurance, the Hawai'i Supreme Court has held that a driver who borrows an uninsured vehicle acts recklessly if he or she drives the vehicle without taking steps to ascertain if it was insured. *State v. Lesher*, 66 Haw. 534, 537, 669 P.2d 146, 148 (1983), *superseded by statutory amendments establishing a good faith defense for car borrowers as stated in State v. Shamp*, 86 Hawai'i 331, 336–38, 949 P.2d 171, 176–78 (App.1997). In *State v. Lee*, 90 Hawai'i 130, 140, 976 P.2d at 444, 454 (1999), the Hawai'i Supreme Court held that absent evidence that the defendant had borrowed the car he was driving, the trial court could reasonably infer that the defendant, who was unable to produce an insurance card, acted recklessly in driving the vehicle without insurance. Similarly, we conclude that a person like Lioen, who knows his license has been revoked or suspended for DUI-alcohol or DUI-drugs in the past and knows he does not have a valid driver's license, acts recklessly if he drives without determining whether his license remains suspended or revoked for DUI-alcohol or DUI-drugs.

The State introduced compelling evidence that Lioen knew his license had been revoked or suspended for DUI-alcohol in the past. Regardless of when Lioen committed his second DWLSR–DUI offense, evidence that he pleaded no contest on May 30, 2001, in his second DWLSR–DUI prosecution showed that he was aware on that date of at least one prior revocation or suspension that satisfied the requirements of HRS § 291–4.5(a). Lioen's knowledge of prior license suspensions for DUI-alcohol could also be ·inferred from evidence that he was sentenced to a license suspension for each of his four prior DUI-alcohol convictions. The State introduced Lioen's traffic abstract and driver's license records which established these license suspensions and DUI-alcohol convictions.

The State also proved that Lioen knew that he did not have a valid driver's license. Officer Taguma testified that on October 11,

2001, Lioen could not produce a driver's license and admitted he did not have one. Lioen was also present in court on May 30, 2001, when he was sentenced to a two-year license suspension for his second DWLSR–DUI conviction.

In light of Lioen's knowledge that his license had previously been suspended or revoked for DUI-alcohol and his knowledge that he did not have a valid driver's license, he acted recklessly in driving without determining whether his license remained revoked or suspended for DUI-alcohol. Had Lioen inquired about the status of his license, he would have learned that his license remained administratively revoked for life as the result of his prior DUI-alcohol arrests.

Viewed in the light most favorable to the prosecution, we conclude that the State produced sufficient evidence to show that Lioen acted with a reckless *mens rea* with respect to the attendant circumstances of the DWLSR–DUI offense. Lioen's conscious disregard of the risk that his license remained revoked or suspended for DUI-alcohol on October 11, 2001, was "a gross deviation from the standard of conduct that a law-abiding person would observe in the same situation." HRS § 702–206(3)(d).

## C. The Trial Court Properly Admitted Evidence Regarding Lioen's Second DWLSR–DUI Conviction.

▇▇ Lioen contends that the trial court erred in permitting Eugene Evans, the DPA in his second DWLSR–DUI prosecution, to testify that on May 30, 2001, Lioen pleaded no contest and was sentenced in that case. He argues that this testimony was inadmissible "other bad act" evidence under Rule 404(b) of the Hawai'i Rules of Evidence (HRE). He further contends that this evidence was irrelevant and that · its probative value was substantially outweighed by the danger of unfair prejudice. HRE Rules 401 and 403.

▇▇▇ Under HRE Rule 404(b), "other bad act" evidence is admissible when 1) it is relevant and 2) its probative value is not substantially outweighed by the danger of unfair prejudice. *State v. St. Clair*, 101 Ha-

wai'i 280, 286, 67 P.3d 779, 785 (2003). A trial court's determination that evidence is relevant within the meaning of HRE Rule 401 is reviewed under the right/wrong standard. *State v. Pulse,* 83 Hawai'i 229, 247, 925 P.2d 797, 815 (1996). In contrast, decisions to admit evidence under HRE Rule 403 and HRE Rule 404(b) are reviewed for abuse of discretion. *State v. Richie,* 88 Hawai'i 19, 37, 960 P.2d 1227, 1245 (1998). A trial court does not abuse its discretion unless it "clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." *State v. Matias,* 74 Haw. 197, 203, 840 P.2d 374, 377 (1992) (internal quotation marks and brackets omitted).

█ HRE Rule 404(b) provides in relevant part that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible where such evidence is probative of any other fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, knowledge, identity, modus operandi, or absence of mistake or accident.

The list of permissible purposes for the admission of "other bad acts" set forth in HRE Rule 404(b) is not intended to be exhaustive. *State v. Clark,* 83 Hawai'i 289, 300, 926 P.2d 194, 205 (1996). Under HRE Rule 404(b), any purpose for which bad-acts evidence is introduced is a proper purpose as long as the evidence is *not offered solely* to prove the defendant's criminal propensity. *Id.* at 300–01, 926 P.2d at 205–06 (citing *United States v. Miller,* 895 F.2d 1431, 1436 (D.C.Cir. 1990)).

We reject Lioen's claim that the trial court abused its discretion in permitting Evans to testify about Lioen's second DWLSR–DUI conviction. This testimony was offered to prove Lioen's reckless state of mind regarding whether his license remained revoked or suspended for DUI-alcohol. That was a permissible purpose under HRE Rule 404(b). *St. Clair,* 101 Hawai'i at 287–88, 67 P.3d at 786–87 (holding that evidence is admissible under HRE Rule 404(b) to prove the defen-

dant's reckless state of mind). Evan's testimony provided proof that Lioen knew that his license had been suspended or revoked for DUI-alcohol in the past and that he knew he did not have a valid driver's license when he drove his truck on October 11, 2001. As we previously concluded, such evidence was highly probative of Lioen's reckless state of mind.

Lioen speculates that the trial judge could have improperly considered Evans' testimony as proof of Lioen's criminal propensity—that because Lioen had committed the offense of DWLSR–DUI on a prior occasion, he was more likely to have committed the offense on this occasion. For this reason, Lioen contends that the probative value of this testimony was substantially outweighed by the danger of unfair prejudice.

█ Lioen's claim is without merit. In a bench trial, we presume that the judge was not influenced by incompetent evidence. *State v. Antone,* 62 Haw. 346, 353, 615 P.2d 101, 107 (1980). This means that when evidence is admissible for a limited purpose, we presume that the judge only considered the evidence for the permissible purpose. *State v. Montgomery,* 103 Hawai'i 373, 383, 82 P.3d 818, 828 (App.2003); *People v. Deenadayalu,* 331 Ill.App.3d 442, 265 Ill.Dec. 285, 772 N.E.2d 323, 329 (2002). Lioen's argument would turn the established rule on its head by having us presume that the trial judge considered Evan's testimony for a purpose specifically forbidden by HRE Rule 404(b). The trial judge did not abuse his discretion in admitting Evan's testimony.

**D. There Was Sufficient Evidence to Show That Lioen Had Been Driving His Truck.**

█ Finally, Lioen claims that there was insufficient evidence to show that he had operated the truck on October 11, 2001, prior to being spotted by Officer Taguma. This claim has no merit.

The State introduced substantial evidence that Lioen had driven the truck. The evidence showed that when Officer Taguma first observed the truck, it was stopped in the middle of High Street, obstructing one lane

of the two-lane roadway. The truck must have moved by some means to arrive at the middle of the street. The obvious inference was that it had been driven there.

Officer Taguma saw Lioen get out of the driver's side of the stalled truck and start to push it. When Officer Taguma went over to lend assistance, Lioen told Officer Taguma that the truck had "just stalled out." Officer Taguma did not see anyone else around the truck. Lioen was evasive when Officer Taguma asked Lioen for information. At no time did Lioen ever mention or claim that someone else had driven the truck. Officer Taguma remained on patrol for another hour after he cited Lioen and did not see anyone else come near the truck. In addition, motor vehicle records established that Lioen was the owner of the truck, having just purchased it on September 15, 2001. We conclude that there was sufficient evidence to prove that Lioen had been driving his truck.

 This court has held that sufficient evidence of the defendant's role as the driver can be established through inferences drawn from circumstantial evidence. *State v. Brown*, 97 Hawai'i 323, 333, 37 P.3d 572, 582 (App.2001); *State v. Chow*, 77 Hawai'i 241, 244–46, 883 P.2d 663, 666–68 (App.1994). Eyewitness testimony that the defendant was driving is not required. *Id.* Under facts very similar to Lioen's case, courts in other states have held that the evidence was sufficient to prove that the defendant had been operating a motor vehicle. *E.g., State v. Miller*, 226 Neb. 576, 412 N.W.2d 849, 850–51 (1987) (holding that the evidence was sufficient where the defendant's truck was stopped sideways in the road and defendant was the sole occupant of the truck); *State v. Teti*, 50 Conn.App. 34, 716 A.2d 931, 935 (1998) (holding that the evidence was sufficient where the defendant was observed next to a vehicle stuck in a snowbank, and footprints coming from the vehicle matched that of the defendant); *State v. Sims*, 426 So.2d 148, 151, 155 (La.1983) (holding that the evidence was sufficient where the defendant was seen in the driver's seat of a parked car with the motor running); *Johnson v. State*, 194 Ga.App. 501, 391 S.E.2d 132, 134 (1990) (same).

The thrust of Lioen's insufficiency argument is that the trial judge should have believed Bruneke's testimony that Bruneke, and not Lioen, had been driving Lioen's truck before it stalled. But credibility determinations are the province of the trier of fact. *State v. Furutani*, 76 Hawai'i 172, 180, 873 P.2d 51, 59 (1994). The trial judge clearly rejected Bruneke's testimony as not credible, a determination we must respect on appeal.

## CONCLUSION

We affirm the April 17, 2002, Judgment of the District Court of the Second Circuit.