Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000118
20-NOV-2014
10:07 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I, Plaintiff-Appellee, v.
WILLIAM E. BARRIOS, Defendant-Appellant

NO. CAAP-13-0000118

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CR. NO. 10-1-0589(1))

NOVEMBER 20, 2014

NAKAMURA, CHIEF JUDGE, LEONARD AND REIFURTH, JJ.

OPINION OF THE COURT BY LEONARD, J.

Defendant-Appellant William E. Barrios (**Barrios**)
appeals from a Circuit Court of the Second Circuit (**Circuit
Court**) Judgment of Conviction and Sentence filed on February 1,
2013.[1] Barrios was convicted of seventy-two counts of Sexual
Assault in the First Degree, in violation of Hawaii Revised
Statutes (**HRS**) § 707-730 (Supp. 2013), seventy-two counts of
Sexual Assault in the Third Degree, in violation of HRS § 707-732
(Supp. 2013), and two counts of Kidnapping, in violation of HRS

---

[1] Honorable Judge Rhonda I.L. Loo presided.

§ 707-720 (1993 & Supp. 2013), for a total of 146 convictions. Barrios was sentenced to the custody of the Director of the Department of Public Safety for a maximum term of 100 years, as follows: Counts 1 through 4 - twenty (20) years each, concurrent with each other; Count 5 - five (5) years, concurrent; Counts 21 through 33 - twenty (20) years, concurrent with each other and to run consecutive to all other counts; Counts 34 through 40 - five (5) years, concurrent with each other and to run concurrent with all other counts; Counts 41 through 42 - ten (10) years, concurrent with each other and to run consecutive to all other counts; Counts 46 through 65 - five (5) years, concurrent with each other and to run concurrent with all other counts; Counts 66 through 89 - twenty (20) years, concurrent with each other and to run consecutive to all other counts; Counts 90 through 120 - twenty (20) years, concurrent with each other and to run consecutive to all other counts; Counts 130 through 153 - five (5) years, concurrent with each other and to run consecutive to all other counts; and Counts 174 through 193 - five (5) years, concurrent with each other and to run consecutive to all other counts.

On appeal, Barrios argues, primarily, that his sentence should be vacated on the grounds that: (1) the Circuit Court violated Hawaiʻi sentencing law when it allowed statements from the victim's grandmother and brother at the sentencing hearing; and (2) the Circuit Court abused its discretion when it imposed a maximum sentence of 100 years in prison because Barrios could have been charged and sentenced to a shorter term under an alternative statute concerning the continuous sexual assault of a minor under the age of fourteen years. In addition, Barrios argues that his conviction should be vacated based on alleged evidentiary errors and prosecutorial misconduct. We affirm.

I. BACKGROUND FACTS

Barrios was charged by an indictment filed on November 15, 2010, with 104 counts of Sexual Assault in the First Degree, HRS § 707-730, eighty-three counts of Sexual Assault in the Third Degree, HRS § 707-732, and five counts of Kidnapping, HRS § 707-

2

720, stemming from alleged incidents involving his ex-girlfriend's minor daughter (**MD**). He was also charged with one count of Attempted Sexual Assault in the First Degree, HRS §§ 707-730, 707-500 (1993), three counts of Sexual Assault in the First Degree, HRS § 707-730, two counts of Sexual Assault in the Third Degree, HRS § 707-732, and one count of Kidnapping, HRS § 707-720, stemming from alleged incidents involving his ex-girlfriend's minor son (**MS**).

On March 16, 2012, the State of Hawaiʻi (**State**) filed a "Notice of Intent to Rely on Potential Rules 404(b), 608, or 609.1 HRE Material." This submission gave notice to Barrios that the State intended to use "[e]vidence of drug use and alcohol use during the commission of the crimes" to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident" under Hawaii Rules of Evidence (**HRE**) Rule 404(b).

On August 24, 2012, Barrios filed a motion *in limine* to exclude certain evidence, including "[e]vidence of alleged drug use and alleged alcohol use during the commission of the alleged crimes" on the ground that such evidence could be prejudicial, confusing, or cumulative under HRE Rule 403.

The State's September 20, 2012 memorandum in response to Barrios's motion *in limine* alleged that while Barrios lived on Maui with his ex-girlfriend (**Mother**) and her children, MD and MS, both he and Mother frequently used drugs and alcohol. "Their choice [of] drugs were marijuana, crystal meth, and cocaine. . . . MD and MS were aware of the drugs in [Barrios's] and their mother's lives."

At the September 28, 2012 hearing on Barrios's motion *in limine*, defense counsel (Apo) argued:

> MR. APO: [W]ell, I would just argue that it's more prejudicial than probative. It opens it up towards — to the introduction of other crimes or wrongs which have not been charged in any way in terms of any drug use, you know, at the very least alcohol use, or repercussions thereof. So I would submit that it's 403, plus it also leads towards the introduction of other crimes, wrongs, or acts.

The deputy prosecuting attorney (**DPA**) (Polak) responded, in part:

> MS. POLAK: Rule 404 does not mandate that all prior bad acts need to be kept out. It's always the purpose to which this evidence is being introduced.
>
> . . . .
>
> In this case, again, the entire complexity of the family, that's what this -- the two adults in the family have been doing around the kids. They've seen it all day long. There is pipes laying around the house. I think it's just incredibly difficult to sanitize this, and I don't think the Court should sanitize because this is what the children were around. And this is why the children were not able to really report [the abuse].
>
> So I think -- you know, I don't know how much it actually affected the crime itself. I think there are times when the kids will be able to say, "Oh, he was acting weird. He was acting tweaked. He was acting like he was on drugs," and then there's times when the drugs may not have had much to do with it[.]

In reply, defense counsel added:

> MR. APO: Here's an additional concern that I have, your Honor. That when the State is over here now, elaborating specific prior bad acts, for example, pipes laying around the house and not giving me any prior 404(b) notice about these specific acts, I would object on that ground as well. I have no 404(b) notice, relative to any pipes laying around the house, for example.

After the court heard the arguments, the following exchange took place:

> THE COURT: So Defense's 9F, just to be, clear, I'm denying 9F, which means that evidence of Mr. Barrios's alleged drug use and alleged alcohol use during the commission of the alleged crimes does come into play . . .
>
> MR. APO: And I guess, at least in terms of the denied provision in mine --
>
> THE COURT: As to evidence that you're aware of. But like you were telling me just now, the first time you heard about all these pipes laying around, obviously, if you're aware of all the pipes laying around, that can come in.
>
> But I suppose if this is the first time you're hearing there was 20 pipes in the closet or whatever you want to say, Mr. Apo, I'm sure you'll be objecting and approaching the bench because none of your discovery had those particular facts or had those particular -- that evidence was never brought to you ahead of time.
>
> MR. APO: I'll make proper objections relative to that.

During the trial, with respect to drug use, Mother testified that Barrios introduced her to crystal methamphetamine while they lived on Maui. Mother stated that at first their drug use was recreational, but that it "got worse" over the years, until they were doing drugs "five, six, seven, days a week at a time." She also said that when Barrios was on crystal methamphetamine, he "turned into a pervert" which meant "wanting sex, watching porn, masturbation . . . sexually abusing myself and my daughter." In addition, Mother witnessed MD being forced to perform sexual acts with Barrios, including "handjobs" and oral sex, from at least 2006 to 2009. She observed MD giving handjobs to Barrios for years, "every time we used drugs. Pretty much the majority of the time we partied, from the beginning to the end. It got more frequent towards the end because the drug use got more frequent, and the control we thought we had got less and less." When asked why she allowed the abuse to go on for so long, Mother stated: "Um, I didn't have the right tools. I was on drugs. I was afraid I was going to get in trouble."

On November 15, 2012 the jury found Barrios guilty of 146 out of the original 200 counts. Barrios was found not guilty of each offense as to MS.

The sentencing hearing was held on February 1, 2013. Defense counsel argued that Barrios should not be sentenced to more than twenty years of imprisonment, based on the maximum sentence for HRS § 707-733.6 (Supp. 2013): Continuous Sexual Abuse of a Minor, an offense Barrios had not been charged with, but arguably could have been. He also noted that similar offenders were sentenced to one to twenty years in prison, as opposed to the eighty-year sentence requested by the State.

The State sought to have MD and her grandmother (**Grandmother**) speak at the hearing. The State also sought to have a victim witness counselor read aloud a letter that had been written by MS and previously submitted with the presentencing report. Barrios objected to the reading of the letter from MS on the ground that it was duplicative, but did not object to

Grandmother giving a statement. The court allowed MS's letter to be read over the defense's objection.

After the presentation of arguments by both sides, the Circuit Court explained the sentence, stating that the crime was "horrendous" and constituted "[s]o many A felonies." The court told Barrios that he had "no respect for the law" and showed no remorse. The Circuit Court cited the need to consider proper punishment and deterrence, noting that Barrios had been a registered sex offender in California. The court described Barrios as "a monster" and a "sick and twisted person." Before announcing its decision, the court stated: "It is the hope of this Court for the safety of all children that you should never see the outside of a prison's walls." The Circuit Court sentenced Barrios to a maximum term of imprisonment of 100 years, as detailed above, with credit for time served.

II. POINTS OF ERROR ON APPEAL

Barrios raises the following points of error:

(1) The Circuit Court erred by allowing the State to introduce evidence of Barrios's drug use at trial in violation of HRE Rules 402, 403, and 404(b);

(2) The Circuit Court erred by failing to admonish or provide curative instructions in response to the DPA's statement during the State's rebuttal that: "When a child is physically injured and needs help, they usually go to a doctor or they go to the hospital. When a child needs spiritual healing they go to church. When a child needs justice, they come before a jury." Barrios asserts that this comment constituted prosecutorial misconduct necessitating a new trial;

(3) The Circuit Court erred by allowing a letter by MS and testimony by Grandmother to be considered during Barrios's sentencing hearing, in violation of HRS § 706-604(3) (1993); and

(4) The court abused its discretion by sentencing Barrios to a maximum term of 100 years in prison because it failed to properly consider the factors listed in HRS § 706-606

(1993) as required by HRS § 706-668.5 (1993 & Supp. 2013) and the sentence is contrary to the legislative intent of HRS § 707-733.6.

III. APPLICABLE STANDARDS OF REVIEW

Whether evidence of Barrios's drug use is relevant under HRE Rule 401 and thus admissible under Rule 402 is reviewed under the right/wrong standard. Costales v. Rosete, 133 Hawai'i 453, 466, 335 P.3d 431, 444 (2014). However, a trial court's decision to exclude or admit evidence under HRE Rule 403 is reviewed for abuse of discretion. Id. Similarly, decisions to exclude or admit evidence under HRE Rule 404(b) and determinations of whether the State gave adequate notice of its intention to use "bad act" evidence are also reviewed for abuse of discretion. State v. Pond, 118 Hawai'i 452, 461, 193 P.3d 368, 377 (2008); State v. Arceo, 84 Hawai'i 1, 11, 928 P.2d 843, 853 (1996). "An abuse of discretion occurs when the court clearly exceeds the bounds of reason or disregards rules or principles of law to the substantial detriment of a party litigant." State v. Behrendt, 124 Hawai'i 90, 102, 237 P.3d 1156, 1168 (2010).

> Allegations of prosecutorial misconduct are reviewed under the harmless beyond a reasonable doubt standard, which requires an examination of the record and a determination of whether there is a reasonable possibility that the error complained of might have contributed to the conviction. Misconduct of a prosecutor may provide grounds for a new trial if the prosecutor's actions denied the defendant a fair trial.

State v. Mainaaupo, 117 Hawai'i 235, 247-48, 178 P.3d 1, 13-14 (2008) (citations and internal quotation marks omitted).

The Hawai'i Supreme Court has stated that:

> A sentencing judge generally has broad discretion in imposing a sentence. The applicable standard of review for sentencing or resentencing matters is whether the court committed plain and manifest abuse of discretion in its decision. Factors which indicate a plain and manifest abuse of discretion are arbitrary or capricious action by the judge and a rigid refusal to consider the defendant's contentions. And, generally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

State v. Solomon, 107 Hawai'i 117, 126, 111 P.3d 12, 21 (2005) (citations, internal quotation marks, and brackets omitted; format altered).

"The weight to be given the factors set forth in HRS § 706-606 in imposing sentence is a matter generally left to the discretion of the sentencing court, taking into consideration the circumstances of each case." State v. Kong, 131 Hawai'i 94, 101, 315 P.3d 720, 727 (2013) (citation omitted). In addition, absent clear evidence to the contrary, we presume that a sentencing court considered all of the HRS § 706-606 factors before imposing a sentence; nevertheless, the Circuit Court must state on the record at the time of sentencing its reasons for imposing a consecutive sentence. State v. Hussein, 122 Hawai'i 495, 503, 509, 229 P.3d 313, 321, 327 (2010).

IV.  DISCUSION

A.  The Drug Use Evidence

Barrios contends on appeal that the detailed evidence of his drug use was irrelevant; even if relevant, it was more prejudicial than probative; and the prosecution's pretrial notice of the drug use evidence was unreasonable. Although it does not appear that Barrios previously objected to this evidence on relevance grounds, either in his motion *in limine*, at the hearing on the parties' motions *in limine*, or at trial, Barrios argued in his motion *in limine* that the drug use evidence should be excluded pursuant to HRE Rule 403. He also argued at the hearing on the motion *in limine* that he did not have adequate notice, pursuant to HRE Rule 404(b), "relative to any pipes laying around the house, for example." With respect to this latter issue, the Court and defense counsel discussed the court's ruling:

> THE COURT: [Barrios's motion *in limine* regarding drug use evidence is denied as] to evidence that you're aware of. But like you were telling me just now, the first time you heard about all these pipes laying around, obviously, if you're aware of all the pipes laying around, that can come in. But I suppose if this is the first time you're hearing there was 20 pipes in the closet or whatever you want to say, Mr. Apo, I'm sure you'll be objecting and approaching the bench because none of your discovery had those particular facts or had those particular -- that evidence was never brought to you ahead of time.

MR. APO: I'll make proper objections relative to that.

THE COURT: Correct.

It does not appear that any further objections were made on HRE Rule 404(b) grounds, regarding drug use or pipes, during trial.

The Circuit Court did not plainly err when it determined that the evidence of drug use by Barrios, as well as by Mother, was relevant because that evidence had a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." HRE Rule 401. Here, evidence of Barrios's drug use was proffered to support the fact that Barrios sexually abused MD, which is clearly "of consequence to the determination of the action." Barrios's drug use tends to make the fact of MD's sexual abuse more probable because, *inter alia*, it shows Barrios's motive, plan, preparation, and opportunity to abuse MD, and why, in part, so many incidents of sexual assault happened without being reported by anyone or stopped by MD's Mother. See, e.g., Quarles v. State, 285 Ga. App. 758, 759 (2007) (testimony by victim that defendant had perpetrated sexual acts against her partly because "he got on drugs really bad" was relevant and admissible as *res gestae* of the crimes); Pennsylvania v. Nieves, 399 Pa. Super. Ct. 277, 285 (1990) ("Given the potential of cocaine use to contribute to appellant's violent sexual aggression against the child victim, appellant's cocaine use was relevant and admissible."); see also, Sharon G. Elstein, Children Exposed to Parental Substance Abuse: The Impact, 34 COLO. LAW. 29, 32-33 (2005) ("Children living in homes where methamphetamine is produced . . . are at risk for neglect, abuse, sexual abuse, and violence. Meth increases sexual desire, as well as paranoia and rage, in users, and children are vulnerable to victimization.").

Here, Mother testified that when Barrios was on crystal methamphetamine, he "turned into a pervert. . . . wanting sex, watching porn, masturbation . . . sexually abusing myself and my

daughter." She observed MD giving handjobs to Barrios for years, "every time we used drugs." As noted, the evidence related to the State's theory of why Mother did not report the abuse sooner.[2] This proffered evidence supports the proposition that Barrios's drug use, at least in part, contributed to the many incidents of sexual abuse endured by MD and is therefore relevant.

A trial court's decision to exclude or admit evidence under HRE Rule 403 is reviewed for abuse of discretion. Costales, 133 Hawaiʻi at 136, 324 P.3d at 946. Similarly, decisions to exclude or admit evidence under HRE Rule 404(b) and determinations of whether the State gave adequate notice of its intention to use "bad act" evidence are also reviewed for abuse of discretion. State v. Pond, 118 Hawaiʻi 452, 461, 193 P.3d 368, 377 (2008); State v. Arceo, 84 Hawaiʻi 1, 11, 928 P.2d 843, 853 (1996). "An abuse of discretion occurs when the court clearly exceeds the bounds of reason or disregards rules or principles of law to the substantial detriment of a party litigant." State v. Behrendt, 124 Hawaiʻi 90, 102, 237 P.3d 1156, 1168 (2010).

We reject Barrios's arguments that the Circuit Court abused its discretion in allowing the State to introduce the drug use evidence. The court did not clearly exceed the bounds of reason when it determined that, although the evidence was prejudicial, the prejudicial impact of the evidence of Barrios's drug use was outweighed by the probative value of showing the intent, plan, preparation, and circumstance of the numerous incidences of sexual assault that allegedly began when MD was seven years old and were repeated many times periodically over the course of roughly seven years.

---

[2] In response to the question "Why did [Mother] allow sexual acts with her daughter and [Barrios] go on for so long and not get any help immediately?" Mother stated, "Um, I didn't have the right tools. I was on drugs. I was afraid I was going to get in trouble. I was embarrassed." Mother also testified that Barrios had complete control over her access to the drugs and that she had become addicted to meth.

Nor did the Circuit Court plainly err, or abuse its discretion, in determining that Barrios had reasonable notice under HRE Rule 404(b), of the drug evidence that the State intended to introduce at trial. First, as noted above, the Circuit Court instructed defense counsel to object at trial to any previously unknown evidence of drug use or drug paraphernalia. Defense counsel agreed to do so. No objections were made. The State filed a Notice of Intent to Rely on Potential Rules 404(b), 608, or 609.1 HRE Material, on March 16, 2012, which indicated an intent to introduce "[e]vidence of drug and alcohol use during the commission of the crimes." Although the drug use testimony described details concerning the acquisition of the drugs and the preparation for and methods of drug use that took place before, as well as during, the commission of the crimes, no objections were raised as to a lack of reasonable notice and we reject Barrios's argument that the alleged deficiencies in providing him more specific notice of such evidence warrant the vacating of his convictions.

B.   The Alleged Prosecutorial Misconduct

Barrios argues that the DPA's statement encouraged jurors to look beyond the facts and applicable law and convict based on their sympathy for the victim. As this court has previously stated:

> (c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.
>
> (d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.

State v. Sanchez, 82 Hawai'i 517, 533, 923 P.2d 934, 950 (App. 1996) (quoting 1 ABA STANDARDS FOR CRIMINAL JUSTICE, THE PROSECUTION FUNCTION, Standard 3-5.8 (2d ed. 1986)).

In this case, however, nearly the entirety of the State's closing argument addressed jury instructions, definitions, and elements of each charge, and matched them to the

evidence presented at trial. The DPA told the jury: "Based on the evidence in this case, I'm going to ask you to find this Defendant guilty of each and every count." During the rebuttal, the DPA also told the jury: "Nobody is asking you to hate the Defendant. We're just asking you to hold this Defendant responsible based on the evidence that was presented in this case." In this context, the DPA remarked "[w]hen a child needs justice, they come before a jury" at the very end of the State's rebuttal. Considering it in the context of the State's argument as a whole, this remark does not appear to be an attempt to divert the jury from its duty to consider the evidence and law at issue. Rather, it is a proper appeal to the jury to do "justice" based on the evidence that was introduced during trial. See, e.g., State v. Fung, No. 30206 at 9 (App. Nov. 23, 2010), cert. denied, No. SCWC-30206, 2011 WL 1320554 (Apr. 6, 2011) ("The prosecutor's comment that 'justice requires' the jury to find the defendant guilty, viewed in context, was essentially that the jury should find [defendant] guilty based on a fair evaluation of the evidence."); see also State v. Stanton, No. 29971 at 4-5 (App. Dec. 20, 2010), cert. denied, No. SCWC-29971, 2011 WL 2132310 (May 26, 2011). This case is distinguishable from cases in which a prosecuting attorney implicitly asked jurors to consider factors besides the evidence presented. See, e.g., State v. Schnabel, 127 Hawaiʻi 432, 452, 279 P.3d 1237, 1257 (2012) (it was prosecutorial misconduct to tell the jury to ignore the "mumbo jumbo" of the jury instructions and go with their "gut feeling"); State v. Apilando, 79 Hawaiʻi 128, 142-43, 900 P.2d 135, 149-50 (1995) (it was improper to ask the jury to "send a message to the defendant that his actions were wrong," because it invited the jury to find the defendant guilty because the alleged behavior is intolerable, not because the elements of the crime had been met). Accordingly, we reject Barrios's argument that the DPA's brief remark at the end of the rebuttal argument constituted prosecutorial misconduct.

C.    The Sentencing Hearing

Barrios argues that he should be resentenced before a different judge because the Circuit Court erred in allowing MS's letter to be read aloud at the sentencing hearing and allowing Grandmother to speak at the sentencing hearing, in addition to allowing MD the opportunity to be heard.  First, we note that Barrios's only objection to the letter was that reading it aloud in public was duplicative and unnecessary:

> MR. APO: So, your Honor, I have an objection towards one of those, which is the letter that I think the State intends to have a victim witness counselor read out loud, which is the letter from [MS], which has already been submitted for purposes of inclusion in the PSI. So I would object to that as being both duplicitous [sic] as well as unnecessary in these circumstances.
>
> . . . .
>
> MR. APO: I mean, my point being that I am pretty sure the Court can read the letter. I don't see why it needs to be put on display for the public.

Barrios did not raise any objection to Grandmother's testimony, which was also reflected in a letter (albeit not verbatim) that was submitted with the presentencing report. Thus, Barrios's argument that the statements violated HRS § 706-604(3) was raised for the first time on appeal and is deemed waived.  State v. Moses, 102 Hawai'i 449, 456, 77 P.3d 940, 947 (2003) ("As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal; this rule applies in both criminal and civil cases.").

Even assuming Barrios's arguments were not waived, we reject Barrios's argument that the Circuit Court abused its discretion by allowing Grandmother to speak and MS's letter to be read.  HRS § 706-604(3) provides:

> In all circuit court cases, the court shall afford a fair opportunity to the victim to be heard on the issue of the defendant's disposition, before imposing sentence. The court, service center, or agency personnel who prepare the pre-sentence diagnosis and report shall inform the victim of the sentencing date and of the victim's opportunity to be heard. In the case of a homicide or where the victim is otherwise unable to appear at the sentencing hearing, the victim's family shall be afforded the fair opportunity to be heard.

Barrios contends that this statute should be interpreted to mean that no one besides the victim of the crime

may be allowed to speak at a sentencing hearing. However, nothing in the language of the statute purports to exclude other testimony. Indeed, it is well-settled that "a sentencing court may consider any and all accurate information that might reasonably bear on the proper sentence for a particular defendant, given the crime committed." Keawe v. State, 79 Hawaiʻi 281, 286, 901 P.2d 481, 486 (1995). In addition, "the scope of a sentencing judge's inquiry into a defendant's background is very broad and limitations on the kind and/or source of information the court may consider are not lightly imposed." Id. (citation and emphasis omitted); see also State v. Murphy, 59 Haw. 1, 21, 575 P.2d 448, 461 (1978). Finally, to the extent applicable, we presume that the trial judge was not influenced by incompetent evidence. See, e.g., State v. Lioen, 106 Hawaiʻi 123, 133, 102 P.3d 367, 377 (App. 2004).

> D.    Barrios's Sentence

Barrios alleges that his sentence was an abuse of discretion because the Circuit Court failed to properly consider the factors in HRS § 706-606. He also contends that it was an abuse of discretion to impose a maximum 100-year sentence where a 20-year sentence would have been more appropriate in light of the language of HRS § 707-733.6: Continuous sexual assault of a minor under the age of fourteen years. Finally, he asserts that the court's "berating" of him during the sentencing hearing contributed to the abuse of discretion.

When considering whether to impose consecutive sentences, a trial court is required by HRS § 706-668.5 to consider the factors set forth in HRS § 706-606. However, the weight to be given each factor is left to the court's discretion. Kong, 131 Hawaiʻi at 101, 315 P.3d at 727. As noted above, "it is presumed that a sentencing court will have considered all factors before imposing concurrent or consecutive terms of imprisonment under HRS § 706-606." Hussein, 122 Hawaiʻi at 503, 229 P.3d at 321. Nevertheless, a court must state on the record and at the time of sentencing the reasons for imposing a

consecutive sentence.  <u>Id.</u> at 509, 229 P.3d at 327.  Further, it has been established that:

> [C]onsecutive prison sentences, pursuant to HRS § 706-668.5, **may properly be imposed only to achieve retributive, incapacitative, and deterrent objectives**.  Thus, at the very least, (1) the sentencing court must expressly intend that the defendant's period of incarceration be *prolonged* by virtue of the consecutive character of the prison terms (the retributive goal), and (2) the sentence must embody the forward-looking aim of *future* crime reduction or prevention (the deterrent goal).

<u>State v. Gaylord</u>, 78 Hawai'i 127, 154, 890 P.2d 1167, 1194 (1995) (first emphasis added).

The critical test, according to the supreme court, is "whether the circuit court articulated a 'meaningful rationale' for the sentence in light of the factors set forth in HRS § 706-606."  <u>Kong</u>, 131 Hawai'i at 104, 315 P.3d 730.  Here, the Circuit Court specifically noted the need to consider the appropriate sentence under HRS § 706-606.  The Circuit Court articulated the reasons for imposing consecutive sentences using language providing a clear link to the HRS § 706-606 factors.[3]  The court stated that "[t]he history and circumstances of the crime that the Court needs to look upon can be no more serious crime than the 72 A felonies that you're looking at, a total of 146

---

[3]     The factors set forth in HRS § 706-606 are:

(1)     The nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     The need for the sentence imposed:

    (a)     To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;

    (b)     To afford adequate deterrence to criminal conduct;

    (c)     To protect the public from further crimes of the defendant; and

    (d)     To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     The kinds of sentences available; and

(4)     The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

different counts." This corresponds to the factors in HRS § 706-606(1) and (2)(a). The court noted Barrios's lack of remorse and respect for the law, the court's need to "consider adequate deterrence for [Barrios's] criminal conduct[,]" and the fact that Barrios had convictions in California and was registered as a sex offender in that state. These considerations correlate to HRS § 706-606(1) and (2)(b). The Circuit Court also apparently considered "[t]he kinds of sentences available" under HRS § 706-606(3) when the court compared the State's request for an 80-year sentence with Barrios's request for a 20-year sentence.

Finally, before imposing a sentence, the court stated, "It is the hope of this Court for the safety of all children that you should never see the outside of a prison's walls." This reflects the direction in HRS § 706-606(2)(c) that the court consider the need to protect the public from further crimes of the defendant. This statement also shows that the Circuit Court intended to prolong the sentence (thus meeting the retributive goal) and protect against future crime (meeting the deterrent goal) as required by Gaylord, 78 Hawai'i at 154, 890 P.2d at 1194.

Barrios also asserts that his sentence is contrary to the legislative intent of HRS § 707-733.6, arguing that because his alleged conduct could have been prosecuted as a single class A felony under HRS § 707-733.6, his sentence should not have exceeded 20 years, the maximum for such a felony.[4] See HRS § 706-659 (Supp. 2013). A review of the legislative history reveals the fallacy of the argument. HRS § 707-733.6 was preceded by HRS § 707-733.5 (repealed 1996), a substantially similar statute.[5] HRS § 707-733.5 was not meant to limit the

---

[4] Barrios does not allege that the State committed prosecutorial misconduct by charging him with 200 felonies or that his conviction should be overturned on that ground.

[5] HRS § 707-733.5(2), which related to the jury unanimity required to convict under the statute was held unconstitutional in State v. Rabago, 103 Hawai'i 236, 81 P.3d 1151 (2003). However, the rest of the statute, including the definition of the offense itself and the indication that it constituted a single class A felony, was constitutional. HRS § 707-733.6 was subsequently
(continued...)

length of sentences imposed on defendants; rather, it was meant to make it less difficult for the State to convict defendants who were accused of molesting minors. 1997 Haw. Sess. Laws, Act 379, § 1 at 1191-92. Specifically, it was meant to address "the problems inherent in the criminal prosecution of sexual abuse cases involving young children who are unable to specify the time, places, or circumstances of each act." Id. Thus, Barrios's reliance on HRS § 707-733.6, the successor of HRS § 707-733.5, is misplaced.

Finally, Barrios contends that the Circuit Court berated him by calling him a "monster" and a "sick and twisted person," contributing to an abuse of discretion. However, in State v. Ortiz, the Hawai'i Supreme Court held in a burglary case that similar comments made by a sentencing judge were not an improper expression of bias or prejudice. 91 Hawai'i 181, 195-96, 981 P.2d 1127, 1141-42 (1999). In that case, the judge spoke to the defendant at sentencing saying: "You're a menace to society;" and "You devoted your life to a pursuit of financial and material gain through crime[.]" Id. However, inasmuch as the judge was required to state her reasons for imposing the sentence, her statement that the defendant was a "menace to society" was proper. Id. Furthermore, the statements related to the defendant's history, one of the factors under HRS § 706-606. Id. Here, the trial court was similarly required to articulate its reasons for sentencing Barrios to consecutive sentences. The Circuit Court's comments regarding Barrios also pertain to the characteristics of the defendant and the seriousness of his crimes, which are factors that must be considered under HRS § 706-606. Thus, we reject Barrios's argument that the Circuit Court's comments were improper and warrant resentencing before a different judge.

---

[5]    (...continued)
enacted in 2006. Its constitutional deficiencies were overcome not by any change of language in the statute itself, but by an amendment to the Hawai'i Constitution. See Haw. Const. art. 1, § 25.

V.   CONCLUSION

For the foregoing reasons, the Circuit Court's February 1, 2013 Judgment of Conviction and Sentence is affirmed.

On the briefs:

Benjamin E. Lowenthal
for Defendant Appellant

Artemio C. Baxa
Deputy Prosecuting Attorney
County of Maui
for Plaintiff-Appellee